```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WILLIAM HEPWORTH,

                Plaintiff,

    -against-                          ORDER
                                       12-CV-1399(JS)(ETB)

PAROLE OFFICER C. MENCARELLI,
PAROLE OFFICER MEYERS, PAROLE
OFFICER MASTRONAED, PAROLE OFFICER
M.S. TUTINO, PAROLE OFFICER M.R.
GAGE, PAROLE OFFICER LISA HOY,
PAROLE OFFICER M.R. TORRES,
B. SMITH,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      William Hepworth, Pro Se
                    03-A-1887
                    Mid-State Correctional Facility
                    PO Box 2500
                    Marcy, NY 13403

For Defendants:     No Appearance
```

SEYBERT, District Judge:

Before the Court is the Complaint of incarcerated pro se plaintiff William Hepworth ("Plaintiff") filed pursuant to 42 U.S.C. § 1983 against the defendants, C. Mencarelli, Meyers, Mastronaed, M.S. Tutino, M.R. Gage, Lisa Hoy, M.R. Torres, all of whom are New York State parole officers as well as defendant B. Smith, who is the Superintendent of Mid-State Correctional Facility. Accompanying the Complaint is an application to proceed in forma pauperis. Upon review of the Plaintiff's declaration in support of his application, the Court finds that his financial status qualifies him to proceed without prepayment of the filing

fee.  Accordingly, Plaintiff's request for permission to proceed in forma pauperis is GRANTED.  However, for the reasons that follow, the Plaintiff's Complaint is sua sponte dismissed against all of the Defendants with the exception of Mencarelli and Meyers in their individual capacities pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii-iii), 1915A(b)(1)-(2) because it seeks monetary relief against Defendants who are immune from such relief and fails to state a claim upon which relief may be granted.

BACKGROUND

Plaintiff, who is currently incarcerated at Mid-State Correctional Facility, claims that in March 2010 he was on parole and was "dating Angela Gray ("Gray") full-time . . . and [her] family loved me."  Compl. at ¶ IV.  Plaintiff alleges that Gray's family did not know that he was on parole until June 2010 when his parole officer, Defendant Mencarelli, went to Gray's parents' house and informed her father and brother that:

> Im [sic] on parole and Im [sic] a violent man
> and Im [sic] a mental case and been to prison
> four different times and I should not be with
> Angela and don't [sic] let me in there [sic]
> house anymore and make Angela leave me. . .  I
> was living at Piligrim [sic] State Mental
> Health Hospital . . . [as well as] my whole
> mental health background.

Compl. at ¶ IV and page one of Plaintiff's handwritten attachment annexed thereto.  Plaintiff also claims that Defendant Mencarelli came to see Plaintiff while he was at Pilgrim State Mental Heath Hospital while Gray was visiting him and Mencarelli allegedly:

2

> told me to leave the room so she can talk she
> told Angela Gray I almost killed my wife and
> Im [sic] a violent man and look ware [sic]
> Billy lives and that mental health patients
> are fucking retarts [sic] and Billy is a
> retard and Angela you and Billy are no longer
> to be with each other which Angela and me
> rejected . . . .

<u>Id</u>. Plaintiff claims that the day following the above-described visit from Mencarelli, Plaintiff was again visited by Mencarelli who is alleged to have:

> put a G.P.S. tracking system on my leg so
> Angela Gray and I can no longer be together
> and made me sign paper work to stay away from
> her . . . .  Because of this P.O. C.
> Mencarelli put emotional distress in me and
> caused distance and trouble between Angela
> Grays [sic] whole intire [sic] family. P.O.
> C. Mencarelli exceed[ed] her authority and
> violated Professional Ethics and Conduct of
> the United States . . . .

<u>Id</u>. Plaintiff alleges that notwithstanding Mencarelli's efforts to keep Plaintiff from Gray, they stayed together as a couple. According to the Complaint, Plaintiff was then transferred to another Parole Officer, defendant Meyers, "and he also would not let [Plaintiff] be with Angela Gray and made [Plaintiff] ware [sic] that G.P.S. Tracking System . . . ." <u>Id.</u> at page 2 of the attachment to the Complaint.

Plaintiff continues:

> P.O. Meyers was so sick in the head he would
> park in his car at 5:30 AM at Pilgrim State
> Hospital Crisis Center and if he seen [sic] me
> talking to one of the female residents there
> he would harrass [sic] them to show him there
> [sic] I.D. to see if it was Angela Grey.

3

<u>Id</u>.  Further, Plaintiff claims that

> P.O. Meyers threaten me bodily harm a couple of times stating if I catch you with Angela Im [sic] going to kick your ass and put you in the hospital and violate your parole which I did not pay no mind to him and Angela and I still kept on being with each other. . . ."

<u>Id.</u> at page 3 of the attachment to the Complaint.  Plaintiff describes that, on September 7, 2010, he was drinking at Captree State Park with Gray and she "went into a blackout."  <u>Id.</u>  According to Plaintiff, he took the car keys from Gray and pushed her while she was standing outside the car at which time he put the car in drive and ran over her foot.  <u>Id.</u>  Plaintiff claims that he then picked her up and put her in the car and drove back to Pilgrim State where she "ran out of the car . . . and a NYS Police Officer pulled up and she said I hit her . . . ."  <u>Id.</u>

Plaintiff claims that he filed a complaint with "NYS DOCS Commissioner Brian Fisher about C. Mencarelli" and since doing this:

> 3 parole officers Parole Officer Tutino Parole officer Gage, SR Parole Officer Lisa Hoy here at Mid-State C.F. and my Field Parole Officer Torres . . . will not let me out of prison. My parole violation hold expired on 11-24-11 these four parole officers will not do there [sic] jobs to find me a place to live so I can be released.  This is due to retaliations for a previous grievance I wrote against P.O. C. Mencarelli, P.O. Meyers, P.O. Mastronead.

<u>Id</u>.  Plaintiff claims that he should have been released on November 24, 2011 when his parole violation hold is alleged to have expired,

4

but he continues to be detained because none of the defendant parole officers have found him a place to live upon his discharge. Id.

As a result of the foregoing, Plaintiff seeks, inter alia:

> 10 million dollars and all parole officers fired from there [sic] jobs as well as for for slander and relatiations [sic] and keeping me in prison which I should not be and this is a Liberty issue as well and to be compinsated [sic] for loss wages from work compinsated [sic] for everyday I've been in jail since 11-24-11 and to be released from prison today. . . . All for 35 million dollars total.

Compl. at ¶ V and pages 7-8 of the attachment annexed thereto.

## DISCUSSION

I. In Forma Pauperis

Having reviewed Plaintiff's declarations in support of his applications to proceed in forma pauperis, the Court finds that he is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Accordingly, Plaintiff's request for permission to proceed in forma pauperis is GRANTED.

II. The Prison Litigation Reform Act

The Prison Litigation Reform Act, codified at 28 U.S.C. § 1915, requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.

§ 1915(e)(2)(B)(i-iii); 28 U.S.C. § 1915A(a) & (b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

It is axiomatic that pro se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read the plaintiff's pro se complaint liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Chavis v. Chappius, 618 F.3d 162 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest[].'" Chavis, 618 F.3d at 170 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009)); see also Jackson v. Birmingham Board of Education, 544 U.S. 167, 171, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

III. Habeas Corpus

As a threshold matter, in so far as Plaintiff seeks " to be released from prison today," such relief is unavailable in this Section 1983 action. A prisoner seeking to challenge his state

6

custody may file a petition in a federal district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Prior to the federal court addressing such a petition, the claim must have been brought to the appropriate state court, with appeals exhausted to the extent permitted by state procedures. 28 U.S.C. 2254(b), (c), see also Picard v. Connor, 404 U.S. 270, 275-76 (1971) (A habeas petitioner seeking to upset a state conviction on federal grounds must first give state courts a "fair opportunity" to pass upon his federal claim.). In addition, 28 U.S.C. § 2244(d)(1) provides for a one-year statute of limitations period to file a habeas petition in federal court. This limitations period beings to run on "the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In New York, a conviction is generally final ninety (90) days after leave to appeal to the New York Court of Appeals is denied. This is because a defendant has ninety (90) days to seek certiorari review before the United States Supreme Court. McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003); see also Sup. Ct. R. 13.

Here, Plaintiff devotes a substantial portion of his Complaint to the proposition that he is being detained illegally and should immediately be released from prison. The proper procedural mechanism for challenging his incarceration is pursuant to 28 U.S.C. § 2254. The Court makes no finding concerning the

statutory time limitations on Plaintiff's filing of a Petition for a Writ of Habeas Corpus or whether any such claims are properly exhausted.

IV. Immunity

    A. Eleventh Amendment Immunity

All of the Defendants Plaintiff seeks to sue are employed by New York State, either by the New York State Division of Parole or the New York State Department of Corrections. Plaintiff has not designated whether he seeks to sue these individuals in their official or personal capacities. Given the nature of the allegations, it appears that Plaintiff intended to sue them in their official capacities and, as such, they are immune from suit under the Eleventh Amendment. Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89-98-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

The Eleventh Amendment bars suits brought by a state's own citizens in federal court. Woods v. Rondout Valley Central School Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (citing Alden v. Maine, 527 U.S. 706, 712, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999)). As an agency or arm of the State of New York, the New York State Board of Parole, Division of Parole is immune from suit under the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Stone v. New

York City Dept. of Homeless Servs., 159 Fed. Appx. 324 (2d Cir. 2005) (affirming dismissal of Section 1983 claim against the New York State Division of Parole as barred by the Eleventh Amendment.); Garcia v. Division of Parole Executive Dept., 09-CV-2045, 2009 WL 2392160, at *1 (E.D.N.Y. August 3, 2009) (state agencies such as the Division of Parole "are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest.'") (quoting Santiago v. N.Y.S. Dep't of Corr. Serv., 945 F.2d 25, 28 n. 1 (2d Cir. 1991)). The Supreme Court instructs that the Eleventh Amendment gives a state government immunity from suit, not just from liability. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993). State employees sued for money damages in their official capacities are similarly barred by the Eleventh Amendment. Graham, 473 U.S. at 165-167, and n. 14, 105 S. Ct. at 3104-3106, and n. 14, 87 L. Ed. 2d 114 (suit for damages against state officer in official capacity is barred by the Eleventh Amendment); Darcy v. Lippman, 356 Fed. Appx. 434, 437 (2d Cir. 2009) ("Eleventh Amendment likewise bars [plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities.").

Here, Plaintiff's claims for money damages against the Defendants in so far as they are sued in their official capacities

are clearly barred by the Eleventh Amendment to the Constitution, <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 268, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997), and are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b).[1]

    B. <u>Absolute Immunity</u>

The Second Circuit has long held that "parole board officials, like judges, are entitled to absolute immunity from suit for damages when they serve a quasi-adjudicative function in deciding whether to grant, deny or revoke parole." <u>Montero v. Travis</u>, 171 F.3d 757, 761 (2d Cir. 1999). Plaintiff appears to allege, though far from clear, that Defendants Tutino, Gage, Hoy and Torres determined that Plaintiff would not be released upon the November 24, 2011 expiration of his parole violation hold because he does not have a place to reside upon his release. Accordingly, although these Defendants were not "deciding whether to grant, deny or revoke parole," as were the defendants in <u>Montero</u>, it appears that they were nonetheless acting in a "quasi-adjudicative" capacity in determining whether Plaintiff satisfied the conditions for release. Thus, even if the determination made by these

---

[1] The Court notes that the Plaintiff's Section 1983 claims against the Defendants in their official capacities must be dismissed for the additional reason that "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." <u>Spencer v. Doe</u>, 139 F.3d 107, 111 (2d Cir. 1998); <u>see</u> <u>also</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

10

Defendants was erroneous, they are still absolutely immune from Plaintiff's § 1983 claim for damages. See id. at 761 ("absolute immunity applies to a judicial function, like revoking parole, even where such action 'was in error' or 'was done maliciously.'").

V. Section 1983

Affording Plaintiff's Complaint a liberal construction as the Court is required to do, the Court next considers whether Plaintiff has a plausible Section 1983 claim against any of the Defendants in their individual capacities. For the reasons that follow, the Court finds that he does not.

> Section 1983 provides that
>
> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rae v. County of Suffolk, No. 07-CV-2138 (RMM) (ARL), 2010 WL 768720, at *4 (E.D.N.Y. Mar. 5, 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate,

11

federal right.  See Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

In addition, in order to state a claim for relief under Section 1983, the plaintiff must allege the personal involvement of a defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  The Supreme Court held in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must pled that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.  Thus, a plaintiff asserting Section 1983 claim against a supervisory official in his individual capacity must sufficiently plead that the supervisor was personally involved in the constitutional violation alleged. Rivera v. Fischer, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009).  A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law.  See Johnson v. Barney, 360 Fed. Appx. 199 (2d Cir. 2010).  With these standards in mind, the Court considers the Plaintiff's claims.

   A.   Claims Against B. Smith, Superintendent of Mid-State Correctional Facility and Parole Officer Mastronaed

Here, although Plaintiff names B. Smith, Superintendent of Mid-State Correctional Facility as a Defendant in the caption of the Complaint, he is not again mentioned in the body of the

Complaint. Given the absence of any allegations concerning this Defendant, it appears that Plaintiff seeks to hold him liable solely because of the supervisory position he holds. Similarly, Plaintiff names Parole Officer Mastronaed in the caption, but does not include any allegation of conduct attributable to this Defendant such to support a finding of personal involvement in any claimed constitutional violation. Accordingly, as plead, Plaintiff's Section 1983 claims against Defendants Smith and Mastronaed fail as a matter of law. Even if Plaintiff had properly alleged the personal involvement of these Defendants, his claims would be dismissed for the additional reason that he has no constitutional right to parole. See infra at 13-14. Accordingly, his Section 1983 claims against these Defendants are implausible and are dismissed with prejudice.

  B. <u>Claims Against Parole Officers Tutino, Gage, Hoy and Torres</u>

It is well-established that prisoners do not have a constitutional right to parole. See, e.g., <u>Villalobos New York State Division of Parole</u>, No. 09-CV-8431 (WHP), 2010 WL 3528926, *3 (S.D.N.Y. Aug. 23, 2010) (citing <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979); <u>Mathie v. Dennison</u>, No. 06-CV-3184 (GEL), 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007) ("It is axiomatic that a prisoner does not have a constitutional right to parole.")). "Where a state has created a statutory scheme for parole, the Due

Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.'" Villalobos, 2010 WL 3528926, at *3 (quoting Barna v. Travis, 239 F.3d 169, 170-72 (2d Cir. 2001) (per curiam) (citing Greenholtz, 442 U.S. at 11-13)). "New York's parole scheme 'is not one that creates in any prisoner a legitimate expectancy of release.'" Villalobos, 2010 WL 3528926, at *3 (quoting Barna, 239 F.3d at 171).

The law in New York State is clear that there is no due process right or protected liberty interest in parole. Russo v. New York State Board of Parole, 50 N.Y.2d 69, 73 (1980); see also Marvin v. Goord, 255 F.3d 40, 44 (2d Cir. 2001) (affirming the district court's dismissal of plaintiff's due process claim challenging a parole process on the ground that New York State's parole scheme does not create a protectable liberty interest); Barna, 239 F.3d at 171 ("plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable"). Accordingly, given that Plaintiff has no liberty interest in parole, insofar as his Complaint is liberally construed to allege a due process claim, it is implausible and is dismissed with prejudice.

C. <u>Claim Against Parole Officers Mencarelli and Meyers</u>

Plaintiff's Section 1983 claims against Parole Officers Mencarelli and Meyers in their individual capacities, though thin,

may proceed.  Plaintiff claims that Mencarelli "put a G.P.S. Tracking System on my leg" and that Meyers "made me ware [sic] a G.P.S. Tracking System."  Compl. at ¶ IV and pages 1-3 of the attachment thereto.  The United States Supreme Court has recently held that the use of a Global Positioning System (GPS) tracking device is a search within the meaning of the Fourth Amendment. <u>United States v. Jones</u>, __U.S.__, 132 S. Ct. 945, 181 L. Ed. 2d 911 (Jan. 23, 2012).  While Plaintiff's claims against these Defendants may not ultimately be successful, the Court declines to <u>sua sponte</u> dismiss them at this early stage in the proceeding.

<u>CONCLUSION</u>

IT IS HEREBY ORDERED that Plaintiff's request to proceed <u>in forma pauperis</u> is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice as against Defendants Mastronaed, Tutino, Gage, Hoy, Torres and Smith and as against Defendants Mencarelli and Meyers insofar as they are sued in their official capacities; and

IT IS FURTHER ORDERED that Plaintiff's Complaint shall proceed as against Defendants Mencarelli and Meyers insofar as they are sued in their individual capacities.  The Clerk of the Court shall forward to the United States Marshal for the Eastern District of New York copies of Plaintiff's Summons, Complaint, and this Order for service upon Defendants Mencarelli and Meyers without

prepayment of fees.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is denied for the purpose of any appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

                                        SO ORDERED.

                                    <u>/s/ JOANNA SEYBERT    </u>
                                    Joanna Seybert, U.S.D.J.

Dated:    June 4, 2012
           Central Islip, New York